UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYSHANA W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CV-541-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** for further proceedings.

**I.      Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Procedural History

On June 14, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act), and a Title XVI application for supplemental security income. (R. 10). Plaintiff initially alleged a disability onset date of May 17, 2016, but later amended the alleged onset date to February 6, 2018. *Id*. Plaintiff alleged that she became disabled due to severe osteoarthritis in both hips,

2

depression, post-traumatic stress disorder (PTSD), and anxiety. (R. 92). Plaintiff was 31 years old on her alleged onset date. Before her alleged disability, Plaintiff worked as a preschool teacher's aide, an office assistant, and a restaurant server. (R. 290-295).

The Commissioner denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on January 22, 2020. Testimony was given by the Plaintiff and a Vocational Expert (VE). On March 20, 2020, the ALJ issued a decision denying disability benefits. (R. 7). The Appeals Council affirmed the decision on August 19, 2020, and Plaintiff timely filed a Complaint in this Court. (R. 1; *see* Doc. 2). (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's March 20, 2020 decision under 42 U.S.C. § 405(g).

### III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of February 6,

2018. (R. 12). The ALJ's determination at step one is not challenged and is supported by substantial evidence.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See id.* A claimant who does not have a severe impairment is not disabled. *See Williams*, 844 F.2d at 1084. Here, the ALJ determined that Plaintiff has severe impairments of osteoarthritis of the bilateral hips (post-bilateral hip replacement surgery), osteoarthritis of the bilateral knees, sacroiliitis, obesity, bipolar disorder, PTSD, and anxiety. (R. 13).

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is presumed to be disabled and is entitled to benefits. Otherwise, the ALJ proceeds to step four.

At step three, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (Musculoskeletal system) and 12.00 (Mental disorders), as well as the criteria set forth in Social Security Ruling (SSR) 19-2p regarding obesity. (R. 13-15).[2]

---

[2] Because the issues in this appeal relate only to Plaintiff's physical impairments, the Opinion and Order does not detail the ALJ's findings with respect to her mental impairments.

4

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. If the claimant can perform her previous work, she is not disabled. Step four includes three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional limitations. [Plaintiff] should not climb ropes ladders, or scaffolds. She should not crawl or stoop. Crouching, kneeling, balancing, and climbing of ramps or stairs can be done occasionally. Due to mental impairments, [Plaintiff] can understand, remember, and carry out simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision, such that she is capable of doing simple or semi-skilled work. [Plaintiff] can maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods. [Plaintiff] can relate to supervisors and co-workers on a superficial and work-related basis and can adapt to a work situation. [Plaintiff] can have occasional contact with the general public.

(R. 16). Citing the VE's hearing testimony in response to a hypothetical reflecting these limitations, the ALJ found that Plaintiff cannot return to her past relevant work due to her mental impairments. (R. 24). Accordingly, the ALJ proceeded to step five.

If the claimant satisfies her burden at steps one through four—thus establishing a prima facie case of disability—the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in significant numbers in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, citing the VE's hearing testimony, the ALJ determined that Plaintiff can perform the requirements of "representative occupations," such as:

- *Optical Goods Assembler*, DOT # 713.689-018; sedentary exertion, with a specific vocational preparation (SVP) level of 2; unskilled; with 72,000 jobs estimated nationally;

- *Table Worker*, DOT # 739.687-182; sedentary; SVP level 2; unskilled; with 192,000 jobs estimated nationally; and

- *Small Product Assembler*, DOT # 706.684-030; sedentary; SVP level 2; unskilled; with 98,000 jobs estimated nationally.

(R. 25). The ALJ found that these jobs exist in significant numbers in the national economy. (R. 25-26). Accordingly, the ALJ found Plaintiff not disabled at step five. (R. 26).

## IV. Discussion

### A. Listing 1.02

Plaintiff argues that her impairments meet or medically equal the criteria of Listing 1.02 for major dysfunction of a joint. Under the regulations applicable to Plaintiff's claim, Listing 1.02 requires evidence of

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable

>> imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. § 404, Subpt. P, App'x 1 (effective Dec. 15, 2017 to Apr. 1, 2018). As applicable to Plaintiff's claim, the claimant must also establish the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively*, as defined in 1.00B2b." *Id*. (emphasis added). An inability to ambulate is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00.[3]

Under the Commissioner's regulations, Plaintiff had the burden to prove that she was unable to ambulate effectively for a continuous period of 12 months. *See Lax*, 489 F.3d

---

[3] Listing 1.00B2b(2) explains that

>> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand  rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. § 1.00B2b1.

at 1084. "[S]pecific medical findings" are required to meet the criteria of a Listing. *See Lax*, 489 F.3d at 1085 (citing 20 C.F.R. § 404.1525).

Here, the ALJ acknowledged objective medical evidence in the record documenting Plaintiff's osteoarthritis. (R. 14). However, the ALJ concluded that Plaintiff's impairments do not meet or equal a Listing, because Plaintiff "maintained the ability to ambulate effectively." *Id*. The ALJ concluded, for instance, that Plaintiff did not require the use of an assistive device for walking before she had bilateral hip replacement surgeries in 2019. (*See* R. 24). Plaintiff testified that before the surgeries, she sometimes used a walker. (R. 17). However, during a consultative examination with Ashlin Paz, D.O. on September 15, 2018, Plaintiff reported that she did not require an assistive device to ambulate. (R. 21). Dr. Paz observed that Plaintiff "moved about the room with a normal gait, with normal safety and stability." (R. 21). Dr. Paz concluded that, although Plaintiff exhibited a slow pace and "limited hip flexion when walking" during the examination, she did not require the use of assistive devices to walk. *Id*.

Furthermore, on January 8, 2019, Kenneth Reed, M.D. observed that Plaintiff "ambulated without difficulty," despite her complaints of pain. (R. 18-19). On September 19, 2019, Justin Reid, M.D., an orthopedic surgeon, observed that, while Plaintiff displayed a "very antalgic gait," she was "not currently using a cane or walker." (R. 19, 794). Plaintiff also reported to Dr. Reid that she could "walk about a block," although she was limited by pain. (R. 794). And in January 2020, shortly after her second hip surgery, Plaintiff "was walking with minimal gait disturbance." (R. 23).

As such, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet or equal Listing 1.02, even prior to her surgeries. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b1 (inability to ambulate effectively could be shown by inability "to walk a block at a reasonable pace on rough or uneven surfaces"). Furthermore, Plaintiff does not point to any medical opinion that she is unable to ambulate effectively. Nor has the Court located evidence that Plaintiff reported being unable to walk without an assistive device. In contrast, two state agency physicians who reviewed Plaintiff's record opined that she could stand and/or walk up to two hours in a workday. (*See* R. 24).

Plaintiff points to her testimony that walking is difficult and exacerbates her pain, and that she uses a motorized cart when shopping. (*See* Doc. 15 at 5-6). However, other statements in the record indicate that Plaintiff is able to go out alone (R. 285), can do her own laundry (R. 284), and goes to church (R. 298). Where substantial evidence supports the ALJ's decision, as it does here, the fact that Plaintiff would weigh the evidence differently does not constitute reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views). Accordingly, the Court cannot reverse the ALJ's step-three findings on this basis. *See id.* (internal citations and alterations omitted) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.' We may not 'displace the agency's choice between two fairly conflicting views, even though the

9

court would justifiably have made a different choice had the matter been before it de novo.'").

Alternatively, Plaintiff argues that the ALJ failed to articulate adequate reasons for finding she does not meet or medically equal Listing 1.02. The Social Security Act requires the Commissioner to make findings of fact based on the evidence and to discuss the evidence, stating the reasons for an unfavorable decision. 42 U.S.C. § 405(b)(1). The ALJ "must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing." SSR 17-2p. However, if the ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p. Rather, the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id*.

Under this standard, the ALJ reasonably found that Plaintiff does not satisfy the "inability to ambulate effectively" criterion of Listing 1.02. As set forth above, the ALJ articulated good reasons for this conclusion. *See* SSR. 17-2p. Nothing further was required, and Plaintiff has shown no reversible error at step three.

**B.    RFC**

Plaintiff argues that the RFC is not supported by substantial evidence, because the ALJ failed to properly consider both her subjective statements and objective medical evidence showing that she cannot sit upright for the duration required by sedentary work.

Plaintiff testified as follows regarding her part-time work as an operations manager:

> Q: Do you have a special chair when you're at your work location?
>
> A: Yes.
>
> Q. Is it designed specifically for your impairment? Or . . . what's special about it?
>
> A: It's just . . . my boss's chair. He lets me sit in it because it's more comfortable for me. . . . It reclines back a little bit. It has armrests. It's very cushioned and I have a pillow underneath it also I sit on.
>
> Q: And what's your longest work shift currently?
>
> A: I try to do four hours a day, five hours. It's spaced out, so I can work a couple hours in the morning if I want and then maybe some in the evening just as long as I try to get the work done that needs to be done for that day. . . .
>
> Q: And when you work at home . . . where do you work, from bed, from the chair?
>
> A: From a reclining chair.
>
> Q: And have you always done that?
>
> A: To be able to be comfortable and work, yeah.
>
> Q: And do you work a set shift when you're working this job?
>
> A: . . . I try to get started at nine and . . . sometimes I do two or three in the morning and then . . . some in the afternoon or the evening. It's just pretty flexible. What I can't do my boss picks up the slack.
>
> Q: So if you have an unfinished project at the end of the day you let the boss know?

11

> A: Yes, I didn't get to this today, I wasn't feeling well or just whatever the case may be and he will pick up the slack.
>
> . . .
>
> Q: Now do you sit in the chair . . . the entire four-hour shift?
>
> A: No.
>
> Q: How long can you sit before you have to change positions?
>
> A: It just depends. I move my legs around a lot to try to get positioned right. I stand up, sit down maybe, I don't know, 15 minutes, sometimes 30 minutes. It just depends on how I'm feeling that day.
>
> Q: And do you have to take breaks while the shift is going on?
>
> A: Yeah. . . . maybe three times, three or four times.
>
> Q: Three or four times. How long would each break be?
>
> A: I usually try to keep it under 30 minutes maybe.
>
> . . .
>
> Q: Now if you're not feeling well can you cut your shift short or shift work to later in the day?
>
> A: Yes, as I said before, sometimes a couple hours in the morning, in the evening. If I have a doctor's appointment, I will leave and go to my doctors' appointments, come back and pick up just whatever I need to do to make sure that the work is done . . . .
>
> Q: So your employer will allow you to do that as long as the work is done?
>
> A: Yes, he's very lenient.

(R. 68-71). Later during the hearing, the VE testified that there are no jobs for an individual who "would only be able to sit intermittently for no more than four hours out of an eight-hour day and can stand or walk for only about one hour per day," with the remaining time spent on "unscheduled breaks of indefinite duration resting in a reclining or other position

as necessary to alleviate chronic pain." (R. 83-84). The VE also stated that competitive employment would be precluded for a hypothetical claimant who would need to recline during the workday with her feet elevated to approximately waist-level. (R. 85-86).

Because the ALJ rejected the above hypothetical limitations in determining Plaintiff's RFC, the ALJ was required to explain how he weighed Plaintiff's testimony and other subjective statements regarding her limitations in sitting for prolonged periods. *See* SSR 16-3p (ALJ's decision must provide "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms"). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]

In assessing the intensity and persistence of a claimant's pain, the Commissioner

---

[4] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

>(i) Your daily activities;
>
>(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
>(iii) Precipitating and aggravating factors;
>
>(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
>(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
>(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed); *see also Keyes-Zachary,* 695 F.3d at 1167.

Here, the ALJ found that Plaintiff's symptoms were not as disabling as alleged during the period prior to her hip surgeries. The ALJ cited two reasons for finding Plaintiff was not as limited as alleged: (1) her ability to sustain work activity on a part-time basis, and (2) evidence that prior to the surgeries, Plaintiff did not require the use of assistive devices to ambulate. (R. 24). Only the former reason relates to Plaintiff's ability to remain seated during a workday.

In light of all evidence in the record, substantial evidence does not support the RFC determination for sedentary work with additional limitations. Although the ALJ cited Plaintiff's part-time work history in explaining the RFC determination, the ALJ did not address why he discounted Plaintiff's allegations that she required frequent breaks and needs to be in a reclining position in order to complete a four-hour shift at her part-time job. While an ALJ's evaluation of symptom allegations "warrant particular deference," *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001), the ALJ must set forth the specific evidence he relies on in evaluating a claimant's subjective symptoms, and must give specific reasons for his findings that are closely linked to substantial evidence. *See White v. Massanari,* 271 F3d. 1256, 1261 (10th Cir. 2001); *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir. 1995).

Additionally, the ALJ's decision did not address any potential link between the objective medical evidence and Plaintiff's alleged sitting limitations. During a consultative examination in September 2018 (prior to Plaintiff's hip surgeries), Dr. Paz found that Plaintiff's bilateral hip flexion is limited to 60 degrees, compared to a full range of motion of 100 degrees. (R. 684). Dr. Paz also noted that Plaintiff had "significant pain" with hip flexion bilaterally. *Id*. Plaintiff's passive hip extension was noted to be 30 degrees bilaterally, representing a full range of motion, but with pain. *See id*. Bilateral hip abduction and internal rotation were both noted to be 30 degrees out of a full range of motion of 40 degrees, with pain. *Id*.

The ALJ acknowledged that Dr. Paz found a "decreased range of motion of [Plaintiff's] bilateral hips with extension, flexion, and abduction." *Id*. The ALJ also noted

that x-rays from September 7, 2018 showed severe osteoarthritis in both hips. *See id*. However, the ALJ did not discuss any further details of Dr. Paz's range-of-motion findings.

Plaintiff asserts that most sedentary work requires 90-degree flexion of the hips, which exceeds the limitations observed by Dr. Paz. (Doc. 15 at 8-9). Plaintiff also notes, correctly, that sedentary work requires the ability to sit for up to six hours in an eight-hour workday. *Id*. Plaintiff argues that her testimony, as well as objective evidence from Dr. Paz's report, support additional limitations in sitting.

Defendant contends that the ALJ properly relied on the opinions of two state agency reviewing physicians. The agency consultants concluded that Plaintiff retains an RFC for sedentary work involving six hours of sitting per eight-hour workday. (R. 23). Defendant also correctly notes that the record lacks a medical source statement or examining medical opinion directly addressing Plaintiff's ability to sit. In appropriate circumstances, the reviewing physicians' opinions could be considered substantial evidence supporting the ALJ's RFC determination. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("The non-examining physician's opinion is an acceptable medical source, which the ALJ was entitled to consider."); *Franklin v. Astrue*, 450 F. App'x 782, 790 (10th Cir. 2011) (unpublished); *see also Sturgeon v. Colvin*, No, 15-cv-52-PJC, 2016 WL 1248905, at *7 (N.D. Okla. Mar. 29, 2016) (finding that opinions of agency nonexamining consultants were substantial evidence that supported the ALJ's RFC assessment).

Here, however, the record before the ALJ included additional, subsequent hearing testimony that Plaintiff is unable to sit for the duration of a four-hour shift at her part-time job, as well as objective medical evidence consistent with those allegations. As such, the

ALJ had a duty to address objective medical evidence, including Dr. Paz's range-of-motion findings, in weighing Plaintiff's statements. The failure to do so is error, because the ALJ was required to consider *all* of the evidence in determining whether Plaintiff's pain was disabling. *See Keyes-Zachary*, 695 F.3d at 1166-67.

Furthermore, Plaintiff's testimony undermines the ALJ's sole reason for finding that she can sit for six hours in an eight-hour workday. The ALJ's proffered reason—the fact that Plaintiff had been performing part-time work—ignores Plaintiff's testimony about her need for frequent and extended breaks from sitting during her part-time shifts. Plaintiff also testified that she required help from her mother when putting on her socks and shoes, due to her limited range of motion. (R. 17, 76). As the ALJ noted during the hearing, a "total hip replacement [is] not usual" for a person of Plaintiff's age (33 to 34 at the time of her surgeries). (R. 58-59). Plaintiff's "hips had to be in pretty bad shape . . . for them to do that." (R. 59).

In these circumstances, Plaintiff's ability to sustain work activity on a part-time basis, alone, is not substantial evidence that Plaintiff can sustain seated work for up to six hours in an eight-hour workday. *See* 20 C.F.R. §§ 404.1571-76, 416.971-76 (while Commissioner may consider as evidence the fact that a claimant performed work below the level of substantial gainful activity, "[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity"). Additionally, because Plaintiff's part-time work is the only basis the ALJ's decision cited for rejecting Plaintiff's alleged sitting limitations, the Court cannot

17

determine whether the ALJ considered the appropriate factors in evaluating Plaintiff's subjective statements. *See* 20 C.F.R. § 404.1529, 416.929.

The Court notes that the ALJ hearing occurred shortly after Plaintiff's hip surgeries, and therefore Plaintiff's testimony related primarily to her limitations prior to 2020. Plaintiff does not contend that she remained so limited after the procedures, and she testified that she hoped to return to work full-time after recovering from surgery. (R. 77; *see also* R. 74 (Plaintiff's counsel indicated that "if we had a crystal ball we might amend to a closed period" of disability, due to Plaintiff's expected improvement following surgery)). However, remand is necessary to determine whether Plaintiff was under a disability during any 12-month period between the amended alleged onset date (February 6, 2018) and Plaintiff's recovery post-surgery.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's RFC determination is not supported by substantial evidence and does not reflect the application of proper legal standards. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 22nd day of March, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge